USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/28/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
     :
OUTDOOR PARTNERS LLC,     :
     :
                     Plaintiff,     :     13 Civ. 1797 (KBF)
     :
                     -v-     :     <u>OPINION & ORDER</u>
     :
RABBIT HOLE INTERACTIVE CORP., et al.,     :
     :
                     Defendants.     :
     :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

       On March 18, 2013, following the failed settlement of a prior lawsuit dating back to 2011 asserting alleged breaches of a developer agreement for two software applications to comply with specifications for Nintendo of America, Outdoor Partners LLC ("OPL") again filed suit against Rabbit Hole Interactive ("RHI"). The second lawsuit, currently pending before this Court, asserts the same causes of action based on the same facts as the first. On September 30, 2013, RHI answered and counterclaimed for breaches of both the settlement and developer agreements.

       Now pending before the Court is RHI's motion for summary judgment as to each of its counterclaims and to dismiss the affirmative claims brought by OPL. For the reasons set forth below, RHI's motion is DENIED as to each of its counterclaims and OPL's claim for breach of contract; its motion is GRANTED solely with respect to OPL's two tort claims.

I.     BACKGROUND

On February 18, 2011, OPL and RHI entered into the Bass Pro Video Game Developer Agreement ("the Developer Agreement"), pursuant to which RHI would develop video games for OPL, and OPL would pay royalties to RHI, conditioned on approval of the games by Nintendo of America.  (Grossman Aff. ¶¶ 3, 4, Ex. 1, ECF No. 30.)  RHI developed a game that failed Nintendo's approval process four times.  (Id. ¶ 6.)  OPL suffered several hundred thousand dollars in harm from this failure.  (Id. ¶ 11.)  On September 30, 2011, Chris Pauwels, a principal of RHI, proposed to OPL that RHI and OPL "agree to share the increased costs due to changes in scope of $184,000.00 equally, therefore $92,000.00 to each party."  (Id. ¶ 9, Ex. 2 (emphasis in original).)

On November 14, 2011, OPL's principal terminated the Developer Agreement pursuant to paragraph 11.2 of the Agreement, which provided that it could be terminated for cause.  (Id. ¶ 14; Ex. 1, at ¶ 11.2; Ex. 3.)  The parties disputed whether OPL owed RHI a Termination Fee.  (See id. ¶¶ 16–18.)  On November 18, 2011, Pauwels wrote in an email to Chip Pedersen of OPL, "The bugs have been fixed and tested."  (Id. ¶ 16, Ex. 4.)

On December 13, 2011, OPL sued RHI and its principals in this Court for, inter alia, breach of contract.  (deBrauwere Decl. ¶ 7, Ex. 3, ECF No. 31.)  On September 14, 2012, the parties entered into a Stipulation of Settlement and Order ("the Settlement Agreement") that dismissed the action without prejudice.  (Id. ¶ 8, Ex. 4.)

In sum, the Settlement Agreement provided for (1) a series of advance payments to RHI ("Royalty Advance payment(s)") (id. Ex. 4, at ¶ 2(a)); (2) a deposit in trust with Pryor Cashman for the benefit of RHI of the sum of $106,901.75 (id. Ex. 4, at ¶ 2(b)), at which time Pryor Cashman would issue a "Deposit Confirmation Notice" (id. Ex. 4, at ¶ 4); and (3) a process by which RHI could deliver to a third party, War Drum Studios LLC ("War Drum") a personal computer on which versions of two games ("the Hunt" and "the Strike" games, together "the Games") reside. War Drum would then report on whether the Games compiled (passed certain technical tests). (Id. Ex. 4, at ¶ 7.) If the results of the initial testing were negative, OPL would issue to RHI an Initial Game Rejection Notice; RHI would then have the opportunity, in its sole discretion, to correct any bugs. (Id. Ex. 4, at ¶ 9.) If the results of the initial testing were positive, OPL would issue a Game Acceptance Notice, and Pryor Cashman would release the $106,901.75 to RHI. (Id. Ex. 4, at ¶ 12.) If the initial testing resulted in a Game Rejection Notice and RHI chose to try to fix any bugs, the Games would then be sent to War Drum for testing a second time. (Id. Ex. 4, at ¶ 9.) If the Games failed a second round of testing, then OPL could issue a Final Rejection Notice and would be entitled to have the funds deposited with Pryor Cashman returned to it. (Id. Ex. 4, at ¶¶ 10, 11.)

In short, the Settlement Agreement provides that RHI's obligation to provide the Games to War Drum for testing occurs after OPL deposits the $106,901.75 in trust with Pryor Cashman, not before. (Id. Ex. 4, at ¶¶ 4, 5.) The process for acceptance and rejection of the Games, and either final payment of the funds to RHI

3

or their return to OPL, occurs thereafter.  (Id. Ex. 4, at ¶¶ 11, 12.)  The terms relating to payment, release, and termination are set forth as specified below.

The Settlement Agreement required OPL to pay "Royalty Amounts," which were defined as "the royalty amounts payable to RHI for the period from October 1, 2011 to March 31, 2012, pursuant to the agreement between OPL and RHI, dated February 18, 2011 (the 'Developer Agreement'), which totals US $121,901.75."  (Id. Ex. 4, at ¶ 1.)  The Settlement Agreement sets forth OPL's payment obligations as follows:

> a. OPL shall make three advance payments of $5,000 each (each, a "Royalty Advance") to RHI, as follows:
>
>> i. OPL agrees that within ten (10) business days of the Settlement Date, OPL will make the first Royalty Advance and shall pay the amount of $5,000 to RHI; and
>>
>> ii. OPL agrees that within thirty (30) business days of the Settlement Date, OPL will make the second Royalty Advance and shall pay to RHI the amount of $5,000; and
>>
>> iii. OPL agrees that within sixty (60) business days of the Settlement Date, OPL will make the final Royalty Advance payment to RHI in the amount of $5,000.
>
> b. OPL agrees that on or before January 15, 2013, OPL will deposit the sum of $106,901.75 . . . in trust for the benefit of RHI and to be released pursuant to the terms of this Settlement Agreement.

(Id. Ex. 4, at ¶ 2.)

The Settlement Agreement provides for releases that only go into effect once RHI has received the Royalty Amounts.  (Id. Ex. 4, ¶¶ 16, 17.)  There is no provision for releases in the event that RHI does not receive the Royalty Amounts for any reason.  Both paragraphs 16 and 17 start with the phrase, "Upon receipt by RHI of

4

the Royalty Amounts, [OPL/RHI] . . . hereby releases and forever discharges" the other party to the Agreement.  (Id. Ex. 4, at ¶¶ 16, 17.)

The Settlement Agreement does not contain a separate provision for termination (or non-termination) prior to completion of the acceptance or rejection process of the Games.  However, the clear language of the Agreement contemplates that either party may terminate before that testing ever commences as follows:

> If this Settlement Agreement is breached or terminated by either party before the receipt of the Royalty Amounts by RHI, each of the parties shall be entitled to proceed with the Litigation with all of their rights preserved and this Settlement Agreement shall be of no force or effect other than those requiring the return of the PC and Games to RHI.

(Id. Ex. 4, at ¶ 18.)  Since termination following testing requires prior payment of the Royalty Amounts, and paragraph 18 contemplates termination that may occur prior to that event, it follows that the Settlement Agreement contemplates a right of termination by either party.

Finally, the Agreement provides as follows:

> OPL hereby unconditionally and irrevocably agrees that if it fails to make any payment due and payable under this Settlement Agreement within five (5) business days of OPL's receipt of a Notice of Default, the entire Royalty Amount less any amounts paid under this Settlement Agreement (the "Remaining Balance") shall be due and payable immediately . . . .

(Id. Ex. 4, at ¶ 28.)

On January 10, 2013, RHI's counsel emailed OPL's counsel a Notice of Default concerning OPL's failure to pay the Royalty Advances.  (Id. ¶ 14, Ex. 5.) According to paragraph 18 of the Settlement Agreement, OPL therefore had until January 17, which was five business days later, within which to make the required

payment, or the unconditional agreement to pay the "Remaining Balance" (pursuant to paragraph 28) would be triggered. On January 14, 2013, OPL's counsel responded that OPL would cure its default by paying the Royalty Advances, but also stated that OPL was exercising its right to terminate the Settlement Agreement. (Id. ¶ 15, Ex 6.)

On January 15, 2013, RHI sent OPL a second and separate Notice of Default regarding its failure to pay the $106,901.75 balance, which, pursuant to the Settlement Agreement, was due on or before January 15. (Id. ¶ 17, Ex 7.) On January 17, 2013, OPL timely paid RHI the $15,000 Royalty Advances. (Grossman Aff. ¶ 18.)

RHI remains in sole possession of the Games.

On March 18, 2013, OPL filed the instant complaint, which alleges breach of the Developer Agreement against RHI as well as conversion and replevin against RHI and three of its principals. (ECF No. 1.) On September 30, 2013, RHI filed an answer and counterclaims in which it alleged that OPL had breached both the Settlement Agreement and the Developer Agreement. (ECF No. 12.) On December 9, 2013, the Court granted RHI's motion to dismiss the complaint against the three individual defendants. (ECF No. 37.)

II.  STANDARD OF REVIEW

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).

III.  DISCUSSION

RHI has moved for summary judgment as to each of its counterclaims as well as with respect to OPL's three affirmative claims.  Except as to two tort claims that may not stand in light of OPL's primary claim for breach of contract, all of RHI's requests for summary judgment fail.

    A.    RHI's First Counterclaim

RHI's first counterclaim asserts that OPL has breached the Settlement Agreement by failing to deposit the sum of $106,901.75 with Pryor Cashman, as provided for in paragraph 2(b) of that agreement.

This counterclaim is based on an erroneous premise: that OPL did not have the right to terminate the Settlement Agreement when it did.  As the provisions set forth above make clear, OPL acted within the four corners of the contract when it terminated the Settlement Agreement, and its payment obligation as to the remaining Royalty Amount ceased at that time.

7

The Settlement Agreement contemplates payment by OPL of certain amounts either directly or into escrow preceding RHI's obligation to provide the Games for testing.  It is certainly possible that the parties could have negotiated for an agreement that neither party could terminate, or that rendered the total Royalty Amounts non-contingent.  They did not.  First, paragraph 1 defines "Royalty Amounts" as the aggregate of the Royalty Advances plus the "remaining sum."  Thus, partial payment of only the Royalty Advances does not equate with payment of the Royalty Amounts.  Next, paragraph 18 contemplates that there could be some circumstance under which termination could occur prior to the payment of the Royalty Amounts.  On January 14, 2013, OPL did exactly that.

Finally, the Settlement Agreement also provides that, if termination occurs prior to the Royalty Amounts being paid and in the absence of paragraph 28 being triggered, the parties are returned to their respective litigation positions status quo ante.  In this regard, the Settlement Agreement states explicitly that, if terminated, it "shall be of no force or effect other than those requiring the return of the PC and Games to RHI." (deBrauwere Decl. Ex. 4, at ¶ 18.)  Paragraph 28, which does impose an unconditional obligation to pay remaining amounts due, was not triggered here, since OPL cured the first Notice of Default within five business days—that is, by January 17.  OPL had cancelled the Settlement Agreement on January 14, the day before it received the second Notice of Default.  Its obligation to cure that default terminated when it terminated the agreement.  "It is a well-established principle of law that when a contract affords a party the unqualified

8

right to limit its life by notice of termination that right is absolute and will be upheld in accordance with its clear and unambiguous terms." Red Apple Dev. Ctr. v. Cmty. Sch. Dists. Two, 303 A.D.2d 156, 157 (N.Y. App. Div. 1st Dep't 2003) (citations omitted).

RHI argues that the cancellation provision of the Agreement only applied if OPL failed to pay any of the Royalty Amounts.  That argument is contrary to the plain language of the Settlement Agreement, which enables either party to terminate the Agreement "before the receipt of the Royalty Amounts by RHI," and defines the Royalty Amounts as the total $121,901.75 due to RHI.  (deBrauwere Decl. Ex. 4, at ¶¶ 1, 18 (emphasis added).)  Because OPL had not yet paid that full amount, but merely the Royalty Advances, OPL retained the right to terminate the Agreement in compliance with its terms.  See T.M. Real Estate Holding, LLC v. Stop & Shop Supermarket Co. LLC, No. 12 Civ. 1808 (CM), 2013 WL 603325, at *7 (S.D.N.Y. Feb. 14, 2013) ("Where parties agree on a termination procedure, the clause must be enforced as written if it is not ambiguous.").[1]

B.     RHI's Second and Third Counterclaims

RHI's arguments in support of summary judgment on its second and third counterclaims, which allege breaches of the Developer Agreement due to OPL's

---

[1] RHI also argues that, by paying the $15,000 Royalty Advances on January 17 after terminating the Agreement on January 14, OPL somehow "reinstated" the Agreement's requirement to pay the $106,901.75 balance.  There is no contractual basis for this position.  OPL complied with the requirement to pay the Advances within five days of receiving the Notice of Default, and terminated the Agreement before the separate deadline to pay the $106,901.75 balance—as it had every right to do.

failure to pay $106,901.75 in royalties to RHI and to pay a $263,600 Termination Fee, also fail.

OPL proffers several facts that raise triable issues and therefore preclude summary judgment. For instance, OPL asserts, with supporting facts, that RHI itself breached the Developer Agreement by failing to develop a video game that complied with Nintendo's specification, as required by the Agreement. (See Grossman Aff. ¶¶ 4, 6, 19, Ex. 1 ¶ 3.) OPL also proffers evidence that RHI acknowledged the flaws in its software: on September 30, 2011, Chris Pauwels, a principal of RHI, proposed that RHI share in OPL's increased costs due to required changes, and on November 18, 2011, Pauwels acknowledged bugs in the game to OPL. (Id. ¶¶ 9, 16, Exs. 2, 4.)

The factual issues regarding whether RHI was in fact the breaching party with respect to the Developer Agreement preclude summary judgment. See, e.g., Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc., 952 F. Supp. 2d 542, 576 (S.D.N.Y. 2013) (finding that factual disputes over the quality of goods that the defendant received gave "rise to triable issues of fact as to whether Plaintiff complied with its own obligations under any contracts governing the parties' transactions").

This Court also denies RHI's motion for summary judgment on its third counterclaim for payment of the Termination Fee. The Developer Agreement allowed for termination for cause in the event of a material breach, and separately allowed OPL to terminate the Agreement without cause so long as it paid a

"Termination Fee." (Grossman Aff. ¶ 14, Ex. 1, at ¶¶ 11.2, 11.3.) Contrary to RHI's argument, the Developer Agreement clearly contemplates that OPL would pay a Termination Fee (a requirement that appears only in the provision regarding termination without cause) <u>only</u> in the event of a termination without cause. (<u>Compare</u> <u>id.</u> Ex. 1 ¶ 11.2 <u>with</u> ¶ 11.3.) Here, OPL has proffered evidence that it terminated the Agreement for cause, because RHI breached the Developer Agreement by developing a game that failed Nintendo's approval process. (<u>Id.</u> ¶ 6.)[2] A triable issue therefore exists as to whether RHI is in fact entitled to a Termination Fee.

    C.    <u>RHI's Motion as to OPL's Claims</u>

        1.  <u>The Release</u>

RHI has moved for summary judgment with respect to OPL's cause of action for breach of the Developer Agreement on the basis that OPL's release in the Settlement Agreement precludes such claim. This argument is without merit.

The releases in the Settlement Agreement never went into effect. The Agreement plainly states, "Upon receipt by RHI of <u>the Royalty Amounts</u>, OPL . . . hereby releases and forever discharges each of the Defendants." (deBrauwere Ex. 4, at ¶ 16 (emphasis added).) As set forth above, the Royalty Amounts included not

---

[2] OPL argues that the Settlement Agreement, by which OPL agreed to pay the Royalty Amounts to RHI, served only to settle the prior action and is inadmissible for purposes of admitting liability. <u>See</u> Fed. R. Evid. 408 (stating that evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise the claim" is "not admissible . . . either to prove or disprove the validity or amount of a disputed claim"). The Court does not need to resolve that question, because in any event OPL proffers facts precluding summary judgment on the question of whether OPL owes royalties or a termination fee to RHI. However, the Court notes that, while as a theoretical matter the Settlement Agreement might be admissible for some purposes and not others, the parties agreed not to use it as an admission or to introduce it as evidence as to any issue of law or fact. (<u>Id.</u> Ex. 4, at ¶ 18.)

11

only the Royalty Advances but also the balance, for a total of $121,901.75.  (Id. Ex. 4, at ¶ 1.)  OPL did not pay the $106,901.75 balance, and OPL terminated the Settlement Agreement before its obligation to do so arose.  Accordingly, OPL did not release its claims against RHI.

>       2.  OPL's Tort Claims

Finally, RHI argues that OPL's breach-of-contract claim precludes its tort claims for conversion and replevin.[3]  The Court agrees.  See Spanierman Gallery, PSP v. Love, No. 03 Civ. 3188 (VM), 2003 WL 22480055, at *4 (S.D.N.Y. Oct. 31, 2003) (dismissing a replevin claim as duplicative of a breach-of-contract claim); Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc., 148 F. Supp. 2d 321, 329 (S.D.N.Y. 2001) (same for conversion).

Here, OPL's tort claims are duplicative of its breach-of-contract claim.  OPL alleges that RHI wrongly exercised control over the software in question while OPL had legal ownership over it, and demands return of the software.  However, the Developer Agreement governs the delivery and ownership of the software.  (Grossman Decl. Ex. 1, at ¶¶ 3, 6.)  The Agreement thus precludes OPL's tort claims.  OPL shall include its argument that it is entitled to return of the software within its request for a remedy on its breach-of-contract claim.  See, e.g., Usov v. Lazar, No. 13 Civ. 818 (RWS), 2013 WL 3199652, at *7–8 (S.D.N.Y. June 25, 2013) (dismissing a plaintiff's replevin and conversion claims regarding diamonds that had not been returned as duplicative of his breach-of-contract claims).

---

[3] OPL did not oppose RHI's arguments regarding its tort claims.

IV. CONCLUSION

For these reasons, RHI's motion for summary judgment is DENIED IN PART as to RHI's counterclaims and OPL's breach-of-contract claim, and GRANTED IN PART as to OPL's tort claims. The Clerk of Court is directed to close the motion at ECF No. 22. The parties shall appear for a status conference to discuss further proceedings in this matter on **Friday, April 4, 2014, at 10:00 a.m.**

SO ORDERED.

Dated:	New York, New York
	March 28, 2014

	_____
	KATHERINE B. FORREST
	United States District Judge